**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOIS CHUN, *Plaintiff*, v. SUSHI MARU EXPRESS CORP., *et al*, *Defendants*. | Civil Action No. 17-6411 **OPINION** |

**John Michael Vazquez, U.S.D.J.**

Plaintiff Lois Chun briefly worked for Defendants. Following her effective "termination" from employment, Plaintiff instituted the present matter, alleging claims related to wages, whistle-blowing retaliation, and defamation. Defendants Sushi Maru Express Corp., Sushi Nara, Komolo Inc., and Kevin Kim (a/k/a Tae Bum Kim) (collectively "Defendants") move to partially dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 4. Plaintiff submitted a brief in opposition. D.E. 7.[1] The Court reviewed the submissions in support and in opposition, and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendants' motion is **GRANTED in part** and **DENIED in part**.

---

[1] In this Opinion, Defendants' motion to dismiss (D.E. 4) will be referred to as "Def. Brf." Plaintiff's brief in opposition (D.E. 7) will be referred to as "Pl. Opp." Defendants did not submit a reply brief.

I. **BACKGROUND**

**A. Factual Background**

Plaintiff is a New Jersey resident. Complaint ("Compl.") ¶ 1; D.E. 1. Defendants Sushi Maru Express Corp., ("Maru") and Sushi Nara ("Nara") are New Jersey business entities specializing in Japanese sushi products. *Id.* ¶¶ 2-3. Maru and Nara are "essentially the same" business entity. *Id.* ¶ 9. Maru and Nara operate sushi counters in supermarkets and specialty markets. *Id.* Defendant Komolo, Inc. ("Komolo") is a Maryland business entity that provides Maru and Nara with sushi supplies. *Id.* ¶ 4. Komolo comingles finances and operations with Maru. *Id.* Defendant Kevin Kim manages labor affairs on behalf of Maru and Nara. *Id.* ¶ 5. He works out of the Maru office in New Jersey. *Id.* ¶ 6.

On April 8, 2016, Defendants hired Plaintiff to be a marketing employee. *Id.* ¶ 8. Specifically, Defendants wanted Plaintiff to spearhead the future marketing development of Maru, Nara, and Komolo. *Id.* ¶ 10. For this work, Defendants agreed to pay Plaintiff a salary of $690 per week and to provide health benefits. *Id.* However, within a week of starting work, Kim told Plaintiff that there was "not much marketing work at that time." Kim instead directed Plaintiff to handle "odds and ends," which resulted in tasks typically completed by hourly paid workers. *Id.* ¶ 11. In particular, Kim instructed Plaintiff to address sanitary code violations at Maru locations. *Id.* Defendants also increased Plaintiff's hours to, on average, a 90-hour-work-week while denying her overtime compensation, health benefits, paid lunch hours, and employer contributions to social security. *Id.* ¶¶ 20, 27. Defendants did not keep records of Plaintiff's, or other employees', hours and wages. *Id.* ¶ 21.

While addressing the complained of sanitary code violations, Plaintiff observed numerous practices of Defendants and their employees that she believed violated the Food, Drug and

Cosmetics Act ("FDCA"); Food and Drug Administration ("FDA") regulations; and other laws. *Id.* ¶ 12. Plaintiff claims that Defendants' employees handled fish without regard for food safety requirements. *Id.* ¶ 13. Employees also improperly transferred "frozen" fish from refrigerators to freezers, causing bacterial growth on the raw fish. *Id.* ¶ 13(A). Further, employees dumped bulk shipments of frozen fish onto a warehouse floor to sort through the shipment, mis-branded the fish to sell it at premium prices, and did not store the fish properly. *Id.* ¶ 13(A)-(H). The foregoing examples are but a few cited in the Complaint.

After a few weeks into her employment, and continuing thereafter, Plaintiff reported to upper management the unsanitary practices and conditions she observed; she also indicated that she believed the practices were unlawful and needed immediate remedial action. *Id.* ¶ 15. Defendants initially received Plaintiff's reports constructively. *Id.* However, as Plaintiff's reports kept accruing, Defendants eventually began to cut her out of communication lines and disregard her reports about the unsanitary conditions. *Id.* Plaintiff claims that Defendants began treating her as a "crazy woman." *Id.* ¶¶ 15-16. Further, Plaintiff asserts that Defendants either knew or believed that she would report the health and safety violations to the supermarkets that Defendants partnered with or to relevant government agencies. *Id.* ¶ 36.

Defendants' alleged retaliation took various forms. Kim told Plaintiff to "shut up." *Id.* ¶ 36. Kim also pointed Plaintiff to an internet blog, where anonymous posters were making false statements about her. Kim allegedly cited this blog as proof that Plaintiff was a "criminal" and was going to be terminated. *Id.* By August 2016, Plaintiff felt so mistreated by upper management that she could no longer go to work. *Id.* ¶ 16. Defendants refused to acknowledge that Plaintiff had been effectively terminated from employment and refused to write a letter of verification confirming that they no longer employed Plaintiff. *Id.* ¶ 18.

**B. Procedural Background**

On August 25, 2017, Plaintiff filed her Complaint. D.E. 1. The allegations in the Complaint are somewhat unclear.[2] The Complaint appears to allege the following seven counts: violation of the Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA") (Count One); violation of the New Jersey State Wage and Hour Law, N.J.S.A. § 34:11-56a ("NJWHL") (Count Two (A))[3]; failure to make proper employer contribution to social security and other benefits (Count Two (B)); failure to keep proper records of Plaintiff's work hours (Count Three); violation of the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 ("CEPA") (Count Five); defamation (Count Six); and retaliation for Plaintiff's worker's compensation request (Count Seven). Defendants' current motion followed. Defendants argue that Counts Two (B), Three, Five, and Six of the Complaint should be dismissed.

**II. LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has

---

[2] For example, some of the counts appear to be based on statutory violations, but no statute or regulation is cited.

[3] The Complaint mistakenly lists two Counts as Count Two. The Court will refer to the first as Count Two (A) and the second as Count Two (B).

4

acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### III. LAW AND ANALYSIS

#### A. Social Security Contributions (Count Two (B))

Defendants argue that Plaintiff's employer social security contribution claim must be dismissed because Plaintiff does not have a private right of action. In support, Defendants assert that the Federal Insurance Contribution Act ("FICA") codifies employer social security contributions and it does not create a private right of action and cite to *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 66 (3d Cir. 2008). Def. Brf. at 3. Plaintiff's opposition to this argument is not clear. She appears to argue that her social security cause of action is different because it concerns the value of the missing contributions, not the loss of wages. Pl. Opp. at 9-10. Without analysis, Plaintiff states that the distinction of her social security claim can be seen in *Lyles v.*

*Burt's Butcher Shoppe & Eatery Inc.*, No. 4:10-CV-53, 2011 WL 4915484, at *6 (M.D. Ga. Oct. 17, 2011). *Id.* at 9.

The Third Circuit has held that FICA does not create a private right of action. *Umland*, 542 F.3d at 67. In *Umland*, a plaintiff sought to bring a FICA cause of action based on the implied terms of her employment contract. Joining the Eleventh Circuit, the Third Circuit rejected that FICA provided a private cause of action. The Circuit stated, "[m]oreover, if we were to read FICA's provisions into every employment contract, we would contradict Congress's decision not to include expressly a private right of action and our belief that Congress did not intend to imply a private right of action either." *Id.*

Plaintiff's attempts to distinguish *Umland* are unclear and unconvincing. In *Lyles*, the Middle District of Georgia briefly mentioned the plaintiff's employer's FICA contributions in completing a FLSA calculation of the overtime compensation to which the plaintiff was entitled. 2011 WL 4915484, at *6. *Lyles* does not stand for the proposition that Plaintiff apparently asserts. In any event, *Umland* is binding precedent on this Court. Therefore, to the extent that Plaintiff is asserting a private right of action under FICA, Count Two (B) is dismissed with prejudice.

**B. Record Keeping (Count Three)**

Next, Defendants argue that their alleged failure to keep a record of Plaintiff's work-hours does not provide an independent cause of action under the FLSA. Def. Brf. at 3. Instead, Defendants claim that an employer's failure to keep proper records triggers a burden-shifting of a FLSA claim. *Id.* Plaintiff, however, contends that the FLSA "is a vast body of law" and that Defendants are "complaining" about Plaintiff being specific in her pleadings. Pl. Opp. at 13. Plaintiff goes so far as to claim that Defendants' argument "is essentially a quibbling over a non-essential matter in the case, and now [sic] worthy of relief."

The Court's independent research indicated that Defendants may not be correct. *See U.S. v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 222-24 (1952); *Donovan v. Frezzo Brothers, Inc.*, 678 F.2d 1166, 1167 (3d Cir. 1982); *Wirtz v. F.M. Sloan, Inc.*, 411 F.2d 56, n.1 (3d Cir. 1969). However, for reasons only known to Plaintiff, she did not adequately address Defendants' arguments. Nevertheless, the Court finds that the Complaint is lacking essential information needed to plead a claim, assuming that a record-keeping violation is a viable cause of action under the FLSA. The Complaint fails to provide the law or statute pursuant to which Count Three is asserted. Therefore, the Court is not sure whether the Complaint is asserting Count Three pursuant to the FLSA, or the NJWHL, or some other statute. The Court will not guess, and the Court will not leave Defendants to guess what claim they are defending against. Therefore, Count Three is dismissed without prejudice.

### C. New Jersey Conscientious Employee Protection Act (Count Five)

Defendants argue that the Complaint fails to plausibly plead a *prima facie* claim under CEPA. Specifically, Defendants assert that Plaintiff has not sufficiently pled a causal connection between the whistle-blowing activity and the adverse employment action. Def. Brf. 3-4. Moreover, Defendants claim that the Complaint admits that Plaintiff's "termination was related in substantial part to retaliation for a workers comp claim," rather than in retaliation for whistle-blowing. *Id.* at 5. Plaintiff responds that the Complaint plausibly alleges a CEPA violation. To that end, Plaintiff points out that the Complaint states that after Plaintiff began reporting sanitary and safety violations to upper management, Defendants began retaliating against her and then effectively terminated her. Pl. Opp. at 15-16.

CEPA is considered a "remedial" statute and is therefore "construed liberally to effectuate its important social goal." *Abbamont v. Piscataway Twp. Bd. of Educ.*, 138 N.J. 405, 431 (1994).

To plead a *prima facie* CEPA claim, a plaintiff must demonstrate that (1) she reasonably believed that the employer's conduct violated a law, rule, regulation, or clear mandate of public policy; (2) she performed "whistle-blowing" activity as described in N.J.S.A. 34:19-3c; (3) an adverse employment action was taken against her; and (4) a causal connection between the whistle-blowing activity and the adverse employment action exists. *Dzwonar v. McDevitt*, 177 N.J. 451, 462 (2003) (citing *Kolb v. Burns,* 320 N.J. Super. 467, 476 (App. Div. 1999)).

CEPA prohibits an employer from taking any retaliatory action against an employee because the employee either "discloses or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes is in violation of a law or a rule or regulation . . . or, is fraudulent or criminal." N.J.S.A. 34:19-3. CEPA also prohibits retaliation if the employee refuses to participate in any activity she believes to be in violation of a law, fraudulent or criminal, or incompatible with a clear mandate of public policy. *Id.* CEPA defines "retaliatory action" as "the discharge, suspension, or demotion of an employee or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2e. *See Abbamont*, 138 N.J. at 423 (holding that the supervisors' recommendations that the plaintiff teacher not be rehired, because he complained of health code violations within the classroom, were retaliatory actions under the CEPA).

Plaintiff plausibly pleads a *prima facie* CEPA claim. Looking to the contested fourth element, the Court finds that Plaintiff plausibly pleads a causal connection between her whistle-blowing activity and Defendants effectively terminating her. The Complaint's factual allegations create a plausible inference that Defendants effectively terminated Plaintiff because she reported health code and safety violation concerns to Defendants. The Complaint identifies specific practices and conditions that Plaintiff observed while employed by Defendants. Plaintiff alleges

8

that these observations reasonably led her to believe that Defendants were violating the FDCA and FDA regulations as well as state and local health code laws. Compl. ¶¶ 12-13. The Complaint then states that Plaintiff voiced these concerns, on repeated occasions, to upper management. *Id.* ¶ 15. Further, the Complaint claims that Defendants either knew or believed that Plaintiff was going to report the existence of these violations to the supermarkets who partnered with Defendants or to relevant government agencies. *Id.* ¶ 36. Finally, the Complaint states that as Plaintiffs' reports grew in frequency and alarm, Defendants ceased being receptive to them. Defendants told Plaintiff to "shut up," ridiculed her, accused her of being a criminal, and cut her out of communications. Defendants' actions culminated in their effectively terminating Plaintiff. Compl. ¶¶ 15-16.

Employer retaliation under the CEPA includes "completed" actions that impact compensation and job rank. Allegations of harassment alone are insufficient to constitute employer retaliation under CEPA. *Borawski v. Henderson*, 265 F. Supp. 2d 475, 486-87 (D.N.J. 2003) (holding that there was no employer retaliatory action when the employee did not allege discharge, demotion, suspension, or other adverse action related to the terms and conditions of his employment); s*ee also Beasley v. Passaic County*, 873 A.2d 673 (N.J. App. Div. 2005) (finding that employer actions resulting in a bruised ego or injured pride do not qualify as adverse employer actions under the CEPA). Here, Plaintiff's allegations of harassment and ridicule are, standing alone, insufficient to allege employer retaliation under the CEPA. However, Plaintiff's allegations go further. The Complaint states that Kim told Plaintiff that she would be terminated and that, thereafter, Defendants did effectively terminate Plaintiff because of her whistle-blowing activity. Therefore, Plaintiff sufficiently alleges retaliatory conduct under the CEPA. Compl. ¶ 36.

9

Finally, Defendants argue that Plaintiff cannot now claim that her termination was causally connected to her whistle-blowing activity because she also alleged in the Complaint that her termination resulted, in substantial part, from her asking for workers' compensation. However, pursuant to the Federal Rules of Civil Procedure, a plaintiff may hypothetically plead in the alternative, and "if a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). In this case, Plaintiff's allegations that Defendants terminated her in retaliation for *both* whistle-blowing activity and for seeking workers' compensation are not irreconcilably inconsistent. It is possible, and plausible, that both situations served as driving factors in Defendants' effective termination of Plaintiff. Therefore, the Court finds that Plaintiff has alleged a *prima facie* CEPA claim. Defendants' motion to dismiss Count Five is denied.

**D. Defamation (Count Six)**

Defendants lastly argue that the Complaint fails to allege a *prima facie* defamation claim because Plaintiff does not allege that any defamatory statement was published to a third party. Def. Brf. at 6. Defendants also argue that even if the Complaint plausibly alleges a defamation claim, that claim would be time-barred. Plaintiff, in opposition, argues that the Complaint has pled a plausible defamation claim. Moreover, Plaintiff asserts that Kim's telling of "others" that she is a criminal was slander *per se*. Pl. Opp. at 17-18.

To plead defamation, a plaintiff must establish that (1) a false statement was made concerning her; (2) the statement was published to a third party and not otherwise privileged; (3) the publisher was at least negligent in publishing the statement; and (4) damages. *Robles v. U.S. Envt. Universal Serv., Inc.*, 469 Fed. Appx. 104, 109 (3d Cir. 2012) (citing *DeAngelis v. Hill*, 180 N.J. 1 (2004)). Under New Jersey law, in a "complaint charging defamation, plaintiff must plead

facts sufficient to identify the defamatory words, their utterer and the fact of their publication." *Zoneraich v. Overlook Hosp.*, 212 N.J. Super. 83, 101 (App. Div. 1986). A vague conclusory allegation is insufficient to plausibly plead defamation. *Id.*

Further, under New Jersey law, defamation *per se* exists when the relevant statement "imputes to another conduct that constitutes a criminal offense" and that offense is of the type that could be "punishable by imprisonment" or "regarded by public opinion as involving moral turpitude." Restatement (Second) of Torts § 571 (1977). *See Robles*, 469 Fed. Appx. at 109 (holding that the accusation of criminality was defamatory as a matter of law) (citation omitted).

Here, the Complaint alleges that Defendants, through Kim, defamed Plaintiff when they told her and others that she was a criminal. The allegation that Kim indicated that Plaintiff was a "criminal" adequately alleges a defamatory statement. However, the defamation count is deficient for other reasons. First, Plaintiff does not plausibly allege when or to whom the statement was made, merely indicating that it was made to Plaintiff and "others." Second, the Complaint also fails to allege that the statement was not privileged. *See Robles*, 469 Fed. Appx. at 109 (upholding summary judgment for the defendant as to a defamation claim because the plaintiffs had not "demonstrated the fact of unprivileged publication"). Therefore, the Court finds that Plaintiff has not sufficiently alleged a defamation claim.[4] Count Six is dismissed without prejudice.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss (D.E. 4) is **GRANTED in**

---

[4] Defendants' argument that the defamation claim is time barred is erroneous. N.J.S.A. 2A:14-3 provides that every action for libel or slander must be commenced within one year after the alleged libel or slander occurred. Defendants erroneously indicate that Plaintiff filed her Complaint on September 25, 2017. Def. Brf. at 6. In fact, the Complaint was filed on August 25, 2017. D.E.1. Therefore, Plaintiff's allegations of defamation occurring in September 2016 are within the statute of limitations.

11

**part** and **DENIED in part**. Defendants' motion is granted as to Counts Two(B), Three, and Six and is denied as to Count Five. Count Two(B) is dismissed with prejudice, and Counts Three and Six are dismissed without prejudice. Plaintiff has thirty (30) days to file an Amended Complaint, if she so chooses, consistent with this Opinion. If Plaintiff fails to file an Amended Complaint, the dismissal of Counts Three and Six will also be with prejudice. An appropriate Order accompanies this Opinion.

Dated: June 28, 2018

_____
John Michael Vazquez, U.S.D.J.