UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Michael S. Kimm, Esq. (MK4476)
KIMM LAW FIRM
333 Sylvan Avenue, Suite 106
Englewood Cliffs, New Jersey 07632
T: 201-569-2880
*Attorneys for Plaintiff*

| | |
|---|---|
| LOIS CHUN, | 17-CV-6411-JMV |
| Plaintiff, | |
| vs. | |
| SUSHI MARU EXPRESS CORP., SUSHI NARA, KOMOLO, INC., and KEVIN KIM, | **Joint Final Pretrial Order** |
| Defendants. | |

This matter having come before the Court for a pretrial conference pursuant to Fed. R. Civ. P. 16; having appeared for plaintiff(s) and having appeared for defendant(s); and counsel all having been notified that:

(1) a jury trial in this matter has been scheduled before the Hon. John Michael Vasquez on _____to be determined_____;

(2) the pretrial submissions detailed in ¶¶ 2, 18 and 19 below are to be submitted no later than forty-five (45) days prior to trial (or as otherwise ordered by the Court) or they will be deemed waived; and

(3) a pretrial housekeeping conference is scheduled before Hon. John Michael Vasquez on _____to be determined_____; the following Final Pretrial Order is hereby entered:

**1. JURISDICTION—**

**Plaintiff states:**   The Court has jurisdiction over this action as it arises under federal law under 28 U.S.C. §§ 1331, 1337 and 29 U.S.C. 216(b), as it implicates the Fair Labor Standards Act.   State claims are appropriate under the supplemental jurisdiction statute 28 U.S.C. § 1367.   Venue is proper under 28 U.S.C. Section § 1391(1), (2)

-1-

because substantial events or omissions occurred in this district and defendants transact business in this district or within the State of New Jersey.

## 2. NATURE OF THE ACTION—

This action asserts FLSA, New Jersey state wage and hour law; and New Jersey state CEPA claims.    Plaintiff's first amended complaint, filed July 3, 2018, ECF11, is the controlling pleading.

## 3. PATENT INFRINGEMENT SUITS ONLY—THE PARTIES' CONTENTIONS.

NA

## 4. PENDING/CONTEMPLATED MOTIONS/TRIAL BRIEFS—Set forth all pending or contemplated motions, whether dispositive or addressed to discovery or the calendar. Also set forth the nature of the motion and the return date. If the Court indicated that it would rule on any matter at pretrial, summarize that matter and each party's position. NOTE: ALL PRE-TRIAL MOTIONS INCLUDING DAUBERT AND IN LIMINE MOTIONS SHALL BE FULLY BRIEFED AND FILED NO LATER THAN FORTY-FIVE (45) DAYS PRIOR TO TRIAL or AS OTHERWISE ORDERED BY THE COURT. Only those motions listed herein will be entertained prior to trial.

Plaintiff's Motions

A. Plaintiff will file motion in limine to preclude use of defendants' "investigatory materials" concerning plaintiff's past character, such as prior lawsuit files; aged social media materials, and related materials as irrelevant, immaterial, prejudicial, and    hearsay. FRE 401, 403, 803.

B. Plaintiff will file motion in limine establishing as a matter of law defendants, as employers were under a duty to maintain contemporaneous, accurate work hours and compensation information, but failed to do so and failed to produce required records under the state and federal wage laws.

C. Plaintiff will file a motion in limine to preclude any opinion testimony regarding defendants' compliance with the Food Code for failure to identity any expert testimony or opinion testimony.

D. Plaintiff will file a motion in limine precluding defendants' presentation of their alleged counterclaims due to failure to allege elements, failure to proffer proof of elements, and due to irrelevant, immaterial and scandalous assertions, FRE 401, 403.

E. Plaintiff will file a motion for adverse inference jury charge based upon defendants' spoliation or failure to produce key business records including those recovered on or about September 11, 2020, by plaintiff through her previously-deleted personal Gmail account, which was accessed during her vacation in South Carolina.

Defendants' Motions

A. Defendant will file motion in limine to preclude use of plaintiff's investigatory materials concerning defendant's past character, such as prior lawsuit files; aged social media materials, and related materials.

B. Defendant will file a motion in limine to preclude any opinion testimony regarding defendants' compliance with the Food Code for failure to identify any expert testimony or opinion testimony.

C. Defendant will file a motion in limine to preclude any use of whistleblower allegations which were not produced in discovery.

**5. STIPULATION OF FACTS**—[Set forth in numbered paragraphs all uncontested facts, including all answers to interrogatories and admissions, to which there is agreement among the parties.]

None.

**6. STIPULATIONS REGARDING TRIAL PROCEDURES**—[The parties shall identify stipulations regarding trial procedures (e.g., exchange of demonstratives, disclosure of deposition designations and objections, etc.)]

The parties will exchange demonstrative exhibits; deposition/transcript readings; interrogatory readings; and other procedural matters, at least 14 days before trial.

**7. JUDICIAL NOTICE**

A. Plaintiff requests that the Court take judicial notice of the following facts:
    None.

B. Defendant objects to the taking of judicial notice for the following reasons:

   None.


## 8. JUDICIAL NOTICE

A. Defendant requests that the Court take judicial notice of the following facts:

   None.

B. Plaintiff objects to the taking of judicial notice for the following reasons:

   None.


**9. PLAINTIFF'S CONTESTED FACTS**—[Plaintiff must state contested facts separately for each Defendant. Proof shall be limited at trial to the contested facts set forth below. Failure to set forth any contested facts shall be deemed a waiver thereof.]

**A. Plaintiff intends to prove the following contested facts with regard to liability:**

1.   Plaintiff is a graduate of Le Cordon Blue, Austin, Texas, with a degree in Culinary Arts.   Plaintiff was an employee of defendants, from approximately April 8, 2016 to September 30, 2016.   When plaintiff was hired, defendants operated approximately 100 Sushi Maru locations, with approximately 20 more impending openings, and defendants had future plans of expansion from there as well.

2.   Sushi Maru operates a sushi counter (or, as defendants call it, "a sushi corner") inside a supermarket or specialty market under a profit-sharing agreement with the operator of the supermarket or specialty market.   Sushi Nara is essentially the same as Sushi Maru but "Nara" is installed in a location which is "too close" to another location of "Maru" such that the pre-existing location might result in a "conflict," so as to "have the cake and eat it too."   Komolo is the supplier of all sushi supplies, all containers and all non-fish supplies such as garnishments.

3. Plaintiff was hired as a "Marketing Employee" who was to be in charge of the then-future marketing direction of the Maru-Nara-Komolo combination of entities towards the next "chapter" of their development but was not permitted to conduct marketing tasks.   Plaintiff was offered a weekly salary of $690.00 for working 35 hours a week plus an hour for paid lunch.   Plaintiff was to be provided with full medical

insurance promptly after her hiring was completed.   The medical insurance was to replace plaintiff's then-existing policy.   Plaintiff was also offered a yearly vacation allowance.   Plaintiff accepted these terms and began to work immediately.

4.   Within one week of commencing the work as "Marketing Employee," plaintiff was told that there was not much marketing work at that time and that she would be expected to do other things.   In fact, the "Marketing Employee" position was abandoned and the defendant-employers, by and through defendant Kevin Kim, the "big boss," directed plaintiff to handle "odds and ends" that were responsibilities of hourly paid workers at various Sushi Maru locations.   Defendants precluded plaintiff from working "marketing tasks" and, recognizing that plaintiff was fluent in English, defendant Kevin Kim directed her to "address" sanitary code violations being raised by supermarket co-venturers as to the unsanitariness of Sushi Maru's practices.

5.   Defendants engaged in a long list of sanitary code violations, both under the State code, local codes and the U.S. Food and Drug Administration regulations.     The Food, Drug & Cosmetics Act, codified at Title 21.   Among these, various measures of protection that apply to food safety and food transportation requirements, the FDCA provides:

A. Section 331 prohibits (a) any adulterated or misbranded food, drug, device, tobacco product, or cosmetic.

B. Section 342 prohibits "adulterated food" including poisonous, insanitary or adulterated ingredients.

C.   Section 123.5(a) mandates that the facilities, methods, practices and controls used to process fish and fishery products are safe and processed under sanitary conditions.

D. Section 110.35 mandates (a) that general buildings and plants be kept in such condition and repair as to prevent food from becoming adulterated within the meaning of the Act and (b) cleaning substances be in compliance with sanitary and safety standards. Subsection ( c) mandates pest control standards.   Subsection (d) mandates that all food-contact surfaces be sanitary both under wet and when dry conditions.   And subsection (e) mandates storage of cleaned and sanitized portable equipment.

E. Section 110.80(a) requires sanitary standards for receiving, inspecting, transporting, segregating, preparing, manufacturing, packaging and storing food products under adequate, sanitary procedures.   This section mandates "raw materials" be handled in certain ways so as to avoid contamination including (1) inspecting and segregating those materials to verify that the raw materials are contaminated; (2) pasteurizing or

otherwise preventing them from becoming infected with microorganisms; (3) preventing toxins from adulterating raw materials; (4) preventing microorganisms from contaminating or adulterating the raw materials; (5) keeping raw materials in bulk in containers so as to prevent adulteration; (6) keeping frozen raw materials in frozen state and thawing in a manner that prevents adulteration; (7) protecting liquid raw materials from contamination.

F.   Section 110.80(b) requires that manufacturing operations adhere to sanitary practices to prevent contamination and unsanitary conditions.

G. Section 123.12, specifically relating to imported fish products, requires (a) detailed importation and importer-of-record records and (b) detailed third-party importer/agency records concerning sanitary practices.

6.   Defendants routinely ordered their workers to mishandle food materials, raw materials, and fish and fishery products in such a way as to be in violation of one or more of the laws and regulations governing the food safety requirements under the FDCA. Among the violations:

A. Defendants routinely used refrigerators (not freezers) before its own untrained, unsanitary staff   re-packed the "frozen" fish; disregarded moisture buildup in the refrigerator; then placed the thawed or thawing fish in freezers, so as to create bacterial icing, in blatant disregard of proper vacuum packaging and freezing of raw fish supplies so as to maintain minimal sanitary, anti-bacterial conditions.   By such actions, defendant Komolo permitted and cultivated bacteria growth and bacteria preservation within the "vacuum packs" due to the moisture build that occurred in the refrigerator.

B.   Defendants re-branded fish that was bought "dirt cheap" as "premium" fish supplies and represented to the supermarket and specialty market joint venturer partners as Sushi Maru or Sushi Nara using only "premium" fish supplies for their customers, quite falsely.   During the process of re-branding the fish, they routinely handled such fish without minimal anti-contamination measures.

C.   The supermarkets and specialty markets generally failed to audit the standards and did not inspect the facilities of Komolo or defendants' fish handling practices.

D.   Komolo employees were not properly trained in the handling of raw food products.   They routinely dumped bulk fish packs from frozen trucks onto the warehouse floor; divided the fish in smaller batches while they thawed; then separated them into smaller units while they thawed; then re-packed them into smaller units for

re-pricing and re-distribution to the numerous Sushi Maru or Sushi Express counter locations and presented them as "premium fish."

E.   Sushi Maru "corner" employees, some of whom were investor-employees, were not properly trained or educated in food handling.   For example, one or more sushi chef was seen by plaintiff as going inside his pants and scratching his crotch; only to return to making sushi products that had been ordered by a consumer, without observing minimal sanitary standards.

F. Sushi Maru and Sushi Nara employees routinely mishandle raw fish supplies; routinely fail to keep them properly refrigerated or frozen until the supplies are to be used and routinely place the customers in peril of bacterial poisoning after consuming unsanitary sushi products.

G.   When raw fish supplies are received, reduced oxygen packaging (ROP), also known informally as vacuum packaging faility, is required.   This requires a zoning variance and HACCP plan (Hazard Analysis Critical Control Point).   Not having these protocols, especially the ROP capability, the raw fish supples were mishandled. Mishandling included the failure to store fish at a proper temperature.   In this regard, salmon and tuna are required frozen at different temperatures using different procedures. Defendants stored salmon along with tuna and disregarded the fish-specific temperature requirements.

H.   Defendant Komolo represented to the consumers and to the supermarket operators that salmon was "Atlantic salmon" and "Norwegian salmon" but in fact the salmon is from the "cheapest" markets and sold as "premium, Atlantic salmon" and "premium, Norwegian salmon."

I.   Defendant Komolo used the same delivery and packing pallet (a square wooden support) where frozen, refrigerated and dry goods were lumped together, then wrapped with vinyl wrapping and handled as a single item rather than treating each category of product (frozen, refrigerated, dry, etc.) as separate types of products and thereby violated the food safety laws and regulations.

J.   Defendant Komolo failed to have proper facilities for raw fish which required state-of-the-art time and temperature controls.   All fish supplies were to have been delivered frozen (shrimp, filet tuna, chopped tuna) but some frozen items were sent for delivery in non-frozen truck or in refrigerated truck.

K.   Defendant Komolo bought bulk fish that came delivered in large trash bags or styrofoam boxes; then defendants' warehouse employees mishandled these fish supplies by dividing them in the open into smaller units to be sold and distributed to various Sushi Maru locations.   Komolo's delivery to local Sushi Maru "corners" often consisted of

improperly re-packaged fish supplies which had icicles, or were delivered in open, trash bags, or in other form.

L.    Sushi Maru and Sushi Nara locations routinely used equipment and appliances on site that were for home use rather than for commercial use.   These included rice cookers, rice containers, toaster ovens, rice-mixing bowls, and cutting boards.

M.    Sushi chefs and other food handlers routinely failed to attend food preparation seminars required by local health departments and routinely failed to check for the hepatitis virus in case of any injury or cuts in the work place.

N.    Plaintiff was required to routinely participate all the on site sanitary inspections by health departments, at the "sushi corners," which were operated by the various chefs.   Some or all of the chefs that handled sushi and food products had not been certified with Serv Safe and thus defendants instructed them to essentially evade the scene whenever an inspection was scheduled, and required plaintiff to be there in place of the chefs.     Defendant Kevin Kim made sure that the chefs would not in any way show up during the inspection and required plaintiff to be presented as the Serv Safe-certified staff.   After plaintiff passed inspection, the chefs would return to work.

7.    In addition to federal food safety laws and regulations, local food safety laws and regulations were routinely violated by essentially the kinds of conduct stated above. In New York City, where defendants operate a significant number of locations, Article 81 of the New York City laws, which prohibit essentially the same kinds of violations as stated above, have been violated.

8.    On numerous occasions, virtually since the first month of her being on the job with defendants, plaintiff reported to upper management about such unsanitary and unlawful practices and warned the officers and companies that they required immediate, remedial and compliance actions.   Initially, the upper level management received plaintiff's reports constructively but, as plaintiff's reports became more frequent and alarming, defendants began to cut plaintiff off from the chain of communication and eventually began to treat her like a paranoid hypochondriac and disregarded her verbal reports about unsanitary and unlawful food preparation and food handling and food storage and transportation practices.

9.    By August 2016, plaintiff was so mistreated by upper management that she could no longer feel wanted or suited at the workplace and she was targeted for scorn and ridicule, and routinely treated as an "crazy woman."

10.    Defendants thus retaliated against her attempts to call the corporate officers' attention to the extensive, long, numerous food safety violations that were ongoing and

flagrant at the operations of Komolo and numerous Sushi Maru locations.    Wherever she visited, she observed informal, untrained workers engaging disgusting practices. Retaliatory actions against her grew worse to a point where she was forced to stop going to work.

11.    Despite the fact that defendants knew that she had been effectively terminated from employment, they refused to acknowledge this fact and refused to write a letter of verification that she was no longer working for them.

12.    In September 2016, after plaintiff reported to defendants, through defendant Kevin Kim, events that were believed to be health code violations, defendant Kevin Kim told plaintiff that she was no longer required.    He manufactured and uttered a pre-textual excuse for termination.    After plaintiff had returned from a business trip to Wisconsin, where she injured her back, defendant Kevin Kim called her and insisted she report to work despite his knowledge she had been injured and was planning to be out for a day. He threatened that unless she reported for work, it would not be good for her.    When she reported to work, defendant Kevin Kim brought her into the conference room, and told plaintiff in the presence of other employees, including Keith Roh, Yumi Kwan, Angela Kim, and other employees that he believed that plaintiff was dishonest, "criminal," and had to be terminated from employment, and offered two weeks of time off for being injured, if she would sign "this document" which he was holding.

13. Upon reviewing the document, the document was a general release and waiver of rights, and plaintiff refused to sign it.    Defendant Kevin Kim uttered that plaintiff was a criminal and that she was feigning her injury.    He further stated that if she tried to do anything in the future, he would "destroy" plaintiff.

14. On the same date, defendant Kevin Kim came to the parking lot where plaintiff's car was parked, and tried to take pictures of plaintiff, plaintiff's car, and plaintiff's roommate who was sitting in the car, and continued to make threats to plaintiff, and coerced plaintiff to sign the waiver documents.

15.    By such action, defendant Kevin Kim, for himself and on behalf of the corporate defendants, and each of them committed defamation per se.

**B. Plaintiff intends to prove the following contested facts with regard to damages:**

Plaintiff suffered non-liquidated damages for defendants' FLSA violations as follows:

The computation for the FLSA and state wage violations is based upon 90 hour work weeks from April 8, 2016, to September 30, 2016; which is 175 days or 25 weeks.

25 weeks X 50 hours of overtime = 1250 hours
Regular rate of pay is $690 per 40 hour week or $17.25 per hour
Over time rate from $17.25 is $25.88

1250 hours X 25.88 = $32,343.75
Double for liquidated damages is $64,687.75.

In addition, plaintiff suffered non-liquidated damages for being retaliated and terminated from her employment due to her CEPA activity; and general damages for defamation by defendants.

In addition, plaintiff will also see statutory liquidated damages; punitive damages; fees and costs.

**10. DEFENDANT'S CONTESTED FACTS**—[Stated separately for each plaintiff. Proof shall be limited at trial to the contested facts set forth below. Failure to set forth any contested facts shall be deemed a waiver thereof.]

**A.     Defendant intends to prove the following contested facts with regard to liability:**

1)     First, the submissions above by Plaintiff's counsel do not include any allegations regarding the causes of action in the Amended Complaint grounded on wrongful termination for filing a claim for workers compensation.   If this was a mistake by Plaintiff's counsel, the Defendant will show at trial the Plaintiff never filed a workers compensation claim.   If this was not a mistake by Plaintiff's counsel, Defendant requests that the cause of action be deemed withdrawn with prejudice.

2)     The Defendant will show at trial that the alleged defamation was a privileged communication to persons with a common interest and the Defendant will show that the Plaintiff's proof does not show the elements required for defamation.

3)     Defendant's proof with regard to the CEPA claim will include evidence that the Defendant has not been cited for any health violation by any governmental authority and that the facilities are operated properly.   Defendant's proof will also include evidence relating to the CEPA element of adverse employment action.   The evidence will show that Defendant's employment ended for reasons unrelated to any alleged sanitary-condition complaints.

4)      Defendant's proof with regard to overtime wages will be that accurate timekeeping records were maintained and Plaintiff received correct overtime pay. Additionally, as a matter of law (The Portal to Portal Act), the Plaintiff cannot claim wages are due for the time it took her to commute from her home to work and the time it took her to commute from work back to her home.

5)      **WITH RESPECT TO COUNTERCLAIMS:**

Counterclaim for Breach of Loan Agreement

On May 23, 2016, Defendant agreed to loan Plaintiff $8,000 which Plaintiff represented to be for medical expenses.   Check #3699 was issued to her on May 23 and the Plaintiff signed a Promissory Note agreeing to pay the loan back in 16 bi-weekly installments of $500.   Plaintiff did not make any payments after July 8, 2016 (which she confirmed in her email which Defendants been provided during discovery).   Plaintiff owes $6,500 on the loan.   The Promissory Note provides that upon default, Plaintiff is responsible for costs of collection and attorney fees.

Counterclaim for Fraud

Plaintiff told Defendant that she knew a man named Paul Swiderski who had experience in preparing product process manuals.   Plaintiff represented to Defendant that Swiderski's fee was $4,000 and Defendant issued a check to Plaintiff, with expectation that she would pay Swiderski.   In September 2016, Plaintiff provided Defendant a copy of an Invoice from Swiderski for an additional $5,980. Defendant then discovered the fraud when Defendant contacted Swiderski.   First, his original fee was only $2,900, not $4,000. Second, he never received anything from Plaintiff. Third, the putative additional invoice for $5,980 was fabricated and not issued by Swiderski. Defendant has been damaged by the $4,000 it gave to Plaintiff.

**B. Defendant intends to prove the following contested facts with regard to damages—**

[This statement must include the factual basis for each defense against plaintiff's claims for damages.]

1)      Defendant has provided Plaintiff with its timekeeping records.   The evidence will show that the Plaintiff timed in and timed out using her cell phone and the Defendant's app which kept track of the time-in and time-out.   All overtime hours worked by the Plaintiff were credited and wages properly paid.

2)      Counterclaim for Breach of Loan Agreement

-11-

On May 23, 2016, Defendant agreed to loan Plaintiff $8,000 which Plaintiff represented to be for medical expenses.   Check #3699 was issued to her on May 23 and the Plaintiff signed a Promissory Note agreeing to pay the loan back in 16 bi-weekly installments of $500.   Plaintiff did not make any payments after July 8, 2016 (which she confirmed in her email which Defendants been provided during discovery).   Plaintiff owes $6,500 on the loan.   The Promissory Note provides that upon default, Plaintiff is responsible for costs of collection and attorney fees.

      3)     Counterclaim for Fraud

Plaintiff told Defendant that she knew a man named Paul Swiderski who had experience in preparing product process manuals.   Plaintiff represented to Defendant that Swiderski's fee was $4,000 and Defendant issued a check to Plaintiff, with expectation that she would pay Swiderski.   In September 2016, Plaintiff provided Defendant a copy of an Invoice from Swiderski for an additional $5,980.

Defendant then discovered the fraud when Defendant contacted Swidersky.   First, his original fee was only $2,900, not $4,000. Second, he never received anything from Plaintiff. Third, the putative additional invoice for $5,980 was fabricated and not issued by Swiderski.   Defendant has been damaged by the $4,000 it gave to Plaintiff.

**11. PLAINTIFF'S WITNESSES**—[Aside from those called for impeachment purposes, only the witnesses whose names and addresses are listed below will be permitted to testify at trial.   Indicate whether the witness is expected to testify live or by deposition.]

A. On liability, plaintiff intends to call the following witnesses who will testify in accordance with the following summaries:

      (1) Plaintiff Lois Chun;
      (2) Dae Sub Choi;

B. On damages, plaintiff intends to call the following witnesses who will testify in accordance with the following summaries:

      (1) Plaintiff Lois Chun;
      (2) Dae Sub Choi;

C. Defendant objects to the following witnesses for the reasons stated:

-12-

Dae Sub Choi is a plaintiff ins a different action which Mr. Choi has not been previously identified or disclosed during discovery and therefore should be barred due to potential surprise and prejudice to plaintiff.

**12. DEFENDANT'S WITNESSES**—[Aside from those called for impeachment purposes, only the witnesses whose names and addresses are listed below will be permitted to testify at trial. Indicate whether the witness is expected to testify live or by deposition.]

A. On liability, defendant intends to call the following witnesses who will testify in accordance with the following summaries:

(1) Defendant will call the Plaintiff and also call Kevin Kim, who will testify that Plaintiff's employment ended because she asserted she was too ill to work.   Defendant will call Paul Swiderski with regard to his work for the Plaintiff and his charges.

B. On damages, defendant intends to call the following witnesses who will testify in accordance with the following summaries:

1)       Plaintiff and/or defendant will call a Human Resources manager to authenticate employment timekeeping records.

C. Plaintiff objects to the following witnesses for the reasons stated:

Anyone other than Defendant Kim has not been previously identified or disclosed during discovery and therefore should be barred due to potential surprise and prejudice to plaintiff.

**13. EXPERT AND SPECIALIZED LAY OPINION WITNESSES**—[No expert or specialized lay opinion witness offering scientific, technical, or other specialized knowledge will be permitted to testify at trial unless listed below. A summary of the expert's qualifications and a copy of his/her report must be provided for the Court's review at the pretrial conference. Said summary shall be read into the record at the time he/she takes the stand, and no opposing counsel shall be permitted to question his/her qualifications unless the basis of the objection is set forth herein.]

A. Plaintiff's expert and specialized lay opinion witnesses are:

Plaintiff.

-13-

B. Defendant's objections to the qualifications of plaintiff's experts and specialized lay opinion witnesses are:

Objection: Plaintiff has not qualification as an expert.   She claims to have attended a "culinary school" but this school has closed and any certificate or diploma she may have earned was unrelated to the issues of this case.

C. Defendant's expert and specialized lay opinion witnesses are:

Kevin Kim and/or John Kim

Plaintiff will object on the basis of lack of prior disclosure; lack of capacity; and irrelevancy/immateriality.

D. Plaintiff's objections to the qualifications of defendant's experts and specialized lay opinion witnesses are:

NA; there was no prior disclosure of any defense expert.


**14. PLAINTIFF'S DEPOSITIONS**—[List, by page and line, all deposition testimony to be offered into evidence. All irrelevant and redundant matters and all colloquy among counsel must be eliminated, unless ruled relevant. Deposition testimony to be used solely for impeachment purposes need not be listed.]

A. On liability, plaintiff intends to read into evidence the following:

Transcript of deposition of Tae B. Kim taken in a related wave and hour action, <u>Dae Sub Choi v Sushi Maru Express</u>, Deposition Transcript, at:

> 5:12 to 7:5
> 11:15 to 14:5
> 14:6 to 14:15
> 16:14 to 16:24
> 76:21 to 76:23
> 50:15 to 51:14
> 89:10 to 89:14

B. On damages, plaintiff intends to read into evidence the following:

C. Defendant objects to the deposition testimony set forth above for the reasons stated:

**15. DEFENDANT'S DEPOSITIONS**—[List, by page and line, all deposition testimony to be offered into evidence. All irrelevant and redundant matters and all colloquy among counsel must be eliminated, unless ruled relevant. Deposition testimony to be used solely for impeachment purposes need not be listed.]

A On liability, defendant intends to read into evidence the following:

1. If Plaintiff denies that she has used the name Sung Jeon, the Defendants will read her answer to Interrogatory #8 into the record.

B. On damages, defendant intends to read into evidence the following:

C. Plaintiff objects to the deposition testimony set forth above for the reasons stated:

**16. PLAINTIFF'S EXHIBITS**—[Except for exhibits the need for which could not reasonably have been foreseen or which are used solely for impeachment purposes, only the exhibits set forth on the exhibit list attached hereto may be introduced at trial. Any objection to an exhibit, and the reason for said objection, must be set forth below or it shall be deemed waived. All parties hereby agree that it will not be necessary to bring in the custodian of any exhibit as to which no such objection is made.]

A. Plaintiff intends to introduce into evidence the exhibits listed on the attached exhibit list (list by number with a description of each exhibit):

B. Defendant objects to the introduction of plaintiff's exhibits (set forth number of exhibit and grounds for objection):

**17. DEFENDANT'S EXHIBITS**—[Except for exhibits the need for which could not reasonably have been foreseen or which are used solely for impeachment purposes, only the exhibits set forth on the exhibit list attached hereto may be introduced at trial. Any objection to an exhibit, and the reason for said objection, must be set forth below or it shall be deemed waived. All parties hereby agree that it will not be necessary to bring in the custodian of any exhibit as to which no such objection is made.]

A. Defendant intends to introduce into evidence the exhibits listed on the attached exhibit list (list by number with a description of each exhibit):

B. Plaintiff objects to the introduction of defendant's exhibits (set forth number of exhibit and grounds for objection):

[COPIES OF EXHIBITS ARE TO BE MADE FOR OPPOSING COUNSEL, AND (3) THREE BENCH BOOKS OF EXHIBITS ARE TO BE DELIVERED TO THE JUDGE IN ACCORDANCE WITH GENERAL PRETRIAL AND TRIAL PROCEDURES."]

**18. PLAINTIFF'S LEGAL ISSUES**—[Any issue not listed shall be deemed waived.]

A. Whether the defendants violated the Fair Labor Standards Act and the New Jersey Wage Act by underpaying plaintiff's wages and/or overtime compensation; and relatedly whether defendants failed to keep proper wage and hour records.

B. Whether the defendants retaliated against plaintiff due to her raising alarms about Food Code violations being committed by defendants in violation of New Jersey Conscientious Employee Protection Act (CEPA).

C. Whether defendants referred to plaintiff as a criminal and thereby committed defamation.

D. Whether defendants retaliated against plaintiff for her request of worker's compensation benefits following an injury on the job.

E. Whether liquidated damages under FLSA and/or punitive damages under general state law are warranted.

F. Whether counsel fees and costs are warranted under FLSA and/or CEPA.

**19. DEFENDANT'S LEGAL ISSUES**—[Any issue not listed shall be deemed waived.]

CEPA- No adverse employment action related to complaints.

Wages- Portal to Portal Act

-16-

Breach of Loan Agreement and Plaintiff's Fraud

**20. MISCELLANEOUS**—[The parties must indicate any other matters that require action by, or should be brought to the attention of, the Court.]

Plaintiff's witness Mr. Dae Sub Choi will testify with the assistance of a Korean/English language interpreter.

**21. JURY TRIALS**—[Litigants should send to Chambers two (2) courtesy copies of the following materials. Submissions should be tabbed and spiral bound (not Velo-bound). The materials should also be sent to the Court on a disc in Microsoft Word format. These materials are due no later than forty-five (45) days prior to trial (or as otherwise ordered by the Court).

A. Each side shall submit to the Court and to opposing counsel a trial brief or memorandum in accordance with Local Civil Rule 7.2, with citations to authorities and arguments in support of its position on all disputed issues of law.

B. The parties are required to confer and submit a combined draft of the proposed jury instructions, including columns indicating disagreements.

C. Any hypothetical questions to be put to an expert witness on direct examination shall be submitted to the Court and to opposing counsel.

D. Counsel shall jointly submit to the Court a single set of proposed voir dire questions as to which the parties are in agreement, not to exceed 30 questions. Parties must also identify any disputed questions in column format.

E. Counsel shall jointly submit to the Court a single proposed special verdict sheet.

F. The parties shall prepare a joint trial exhibit list containing a description of all exhibits. The list shall be divided into three columns: the first column will identify the exhibit; the second column will state the opponent's objection and contain a short statement citing the relevant rule and/or concept that supports the objection; the third column will contain the proponent's rationale for admissibility. The exhibits themselves are to be pre-marked and must include exhibit stickers. Additionally, the parties must prepare three copies of the bench book containing the exhibits that they expect to use.

G. The parties shall identify any equitable, legal, or other issues that they contend should be decided by the Court, through a bench trial or otherwise.

-17-

**22. NON-JURY TRIALS**—[The following materials should be submitted to the Court in the same manner as materials for jury trials, listed above. The materials must be submitted no later than forty-five (45) days prior to trial or as otherwise ordered by the Court]:

A. Each side shall submit to the Court and opposing counsel a trial brief or memorandum in accordance with Local Civil Rule 7.2 with citation to authorities and arguments in support of its position on all disputed issues of law.

B. Following a non-jury trial, proposed findings of fact and conclusions of law must be submitted to the Court within one week of the close of trial (or as otherwise ordered by the Court). Submitting litigants must include specific reference to testimonial or documentary evidence in support of the proposals.

C. If any hypothetical questions are to be put to an expert witness on direct examination, they shall be submitted to the Court and opposing counsel.

**23. TRIAL COUNSEL**—[Each party shall identify the names, law firms, addresses, telephone numbers, and email addresses for the attorneys who will try the case on behalf of that party.]

Plaintiff's counsel:

Michael S. Kimm, Esq.
KIMM LAW FIRM
333 Sylvan Avenue, Suite 106
Englewood Cliffs, NJ 07632
Tel 917-477-8500
Cell 917-670-2060
Email: msk@kimmlaw.com

Defendant's counsel:

Sukjin Cho, Esq.
2160 North Central Road, Suite 305
Fort Lee, NJ 07024
Tel 201-886-0200
Shenrycho@gmail.com

24. **BIFURCATION**—[If any party intends to request phasing, bifurcation, or other procedure concerning the trial length or ordering of evidence, that party shall include any such request herein and explain the basis for the request.]

Plaintiff does not request bifurcation.

25. **ESTIMATED LENGTH OF TRIAL**—[Each party shall specify the number of hours that it contends is appropriate for each party for each of the following: (a) voir dire; (b) opening statements; (c) presentation of evidence for liability; (d) presentation of evidence for damages; (e) closing arguments.]

Plaintiff states that the trial is likely to require 3-4 trial days.

AMENDMENTS TO THIS PRETRIAL ORDER WILL NOT BE PERMITTED UNLESS THE COURT DETERMINES THAT MANIFEST INJUSTICE WOULD RESULT WERE THE AMENDMENT DISALLOWED. THE COURT MAY FROM TIME TO TIME SCHEDULE CONFERENCES AS MAY BE REQUIRED EITHER ON ITS OWN MOTION OR AT THE REQUEST OF COUNSEL.

_____   7/15/2021
Michael S. Kimm
Kimm Law Firm
Attorneys for Plaintiff

_____   7/16/2021
Sukjin Henry Cho
Attorney for Defendants

Dated: July 19, 2021

s/Mark Falk
_____
Hon. Mark Falk
Chief United States Magistrate Judge

-19-

**EXHIBIT LISTS**

**Plaintiff's Exhibit List:**

| Exh # | Description | ID | EVID |
|-------|-------------|----|----|
| 1 | 20160809a -Gmail - (no subject) | | |
| 2 | 1 Sprint SC receipt of SIM Card | | |
| 3 | 2 Travel Dates - Lois Chun | | |
| 4 | 20160411 email - to Kevin -mail - branding book | | |
| 5 | 20160411a to Kevin - File -Farmhouse Kolaches Brand+Concept Book | | |
| 6 | 20160411b to Angela -Gmail - brand book | | |
| 7 | 20160411c to Angela - File -Farmhouse Kolaches Brand+Concept Book (1) | | |
| 8 | 20160412 -Gmail - webmail url | | |
| 9 | 20160412-Gmail - Sushi Maru Workspace Webmail Account | | |
| 10 | 20160418a -Gmail - marketing ppt | | |
| 11 | 20160418b -SME_Marketing_PT_v30 | | |
| 12 | 20160418c -maru pt   1 | | |
| 13 | 20160531a -Gmail - expense | | |
| 14 | 20160531b -lolo's expense | | |
| 15 | 20160531c Receipt -a - Gmail - Emailing Receipt 00203 | | |
| 16 | 20160531d -Receipt 00203 | | |
| 17 | 20160605a -Gmail - I am sharing 'Case Assessment.docx' with you | | |
| 18 | 20160605b -Case Assessment | | |
| 19 | 20160616a -Gmail - (no subject) | | |
| 20 | 20160616b - receipt | | |
| 21 | 20160618 -Gmail - branding book | | |
| 22 | 20160620a -Gmail - sop | | |
| 23 | 20160620b -Sushi_Maru_Express-HACCP-SOP_v3.0 | | |

| 24 | 20160703a -Gmail - report | | |
|---|---|---|---|
| 25 | 20160703b -midwest report | | |
| 26 | 20160704a- Gmail - v2 | | |
| 27 | 20160704b -expense v2 | | |
| 28 | 20160706a -Gmail - pics | | |
| 29 | 20160706b - sanitation pics | | |
| 30 | 20160706c - sop | | |
| 31 | 20160708 -Gmail - (no subject) | | |
| 32 | 20160712 -Gmail - Blue bell | | |
| 33 | 20160712 -Gmail - Kentucky | | |
| 34 | 20160715 -Gmail - update | | |
| 35 | 20160718a- Gmail - Fwd_ Hampton inn cc auth | | |
| 36 | 20160718b-cc auth | | |
| 37 | 20160723a -Gmail - expense | | |
| 38 | 20160723b -lolo's expense 20160712 | | |
| 39 | 20160723c -lolo's expense 20160712 | | |
| 40 | 20160723d- lolo's expense 20160712 | | |
| 41 | 20160723e-lolo's expense 20160712 | | |
| 42 | 20160726 citibank -Gmail - (no subject) | | |
| 43 | 20160726b citibankDoc1 | | |
| 44 | 20160726c Gmail - (no subject) | | |
| 45 | 20160726d - receipts | | |
| 46 | 20160727a -Gmail - (no subject) | | |
| 47 | 20160727b - cc image | | |
| 48 | 20160809b | | |
| 49 | 20160815 -Gmail - brand book | | |
| 50 | 20160816a -Gmail - costco | | |
| 51 | 20160816b -costco | | |

| | | | |
|---|---|---|---|
| 52 | 20160908a -Gmail - sop files | | |
| 53 | 20160908b HAACP BASED MENU | | |
| 54 | 20160908c haccp | | |
| 55 | 20160908d Importance of Food Safety | | |
| 56 | 20160908e procedures v1 | | |
| 57 | 20160908g product v1 | | |
| 58 | 20160910a -Gmail - expense | | |
| 59 | 20160910b-Book1 | | |
| 60 | 201609080f recipes v1 | | |
| 61 | Case Assessment | | |
| 62 | SME Email Login Screenshot    2020-09-22 225701 | | |
| 63 | Food & Safety News 2-23–10 | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Defendants' Exhibit List:**

The following list (together with copies of the documents) has been provided to Plaintiff's counsel as part of responses to Plaintiff's discovery demands:

| Exhibit | Description |
|---------|-------------|
| 1 | Employment Agreement dated 4/11/2016 |
| 2 | Employment Agreement dated 5/29/2016 |
| 3 | Promissory Note |
| 4 | Attendance Records including Punch-In/Punch-Out |
| 5 | Paycheck Stubs Weekly |
| 6 | Pay Summary 4/11/2016 to 9/17/2016 |
| 7 | Checks Issued for Wages, Travel, Loan, etc. |
| 8 | Actual Invoice and Quote |
| 9 | Email from C.P.A. |
| 10 | Fabricated Invoice |
| 11 | Email from Plaintiff |
| 12 | 7 On Your Side – K-Pop |
| 13 | Rosenbaum Pleading 155549/2012 |
| 14 | Rosenbaum Pleading 652689/2018 |
| 15 | Madison Park Pleading 651786/2014 |
| 16 | E. Creator Management, Inc. Entity Status, NY Dept of State |
| 17 | E. Creator, Inc. Entity Status, NY Dept of State |
| 18 | Website – Send Lois Chun to Jail |
| 19 | Website – Update |
| 20 | Website – Send Lois Chun to Jail |
| 21 | Website – Victims and Stories |
| 22 | Certificate of HACCP Course Completion – Tae B. Kim |
| 23 | Certificate of HACCP Course Completion – Soo Y. Yoo |
| 24 | Guidance for Fish |
| 25 | HACCP Standard Operating Procedures |
| 26 | HACCP Plan by Type of Product |
| 27 | Letter re HACCP dated 6/24/2016 |
| 28 | Inspection Report dated 12/9/2015 |
| 29 | Inspection Report dated 6/24/2015 |
| 30 | Inspection Report dated 2/3/17 |
| 31 | Invoices for Salmon Purchases (24) |
| 32 | Article about Norwegian Salmon Quality |
| 33 | Article about Faroe Islands Salmon |
| 34 | Invoices for Refrigerated Trucks (3) |
| 35 | Purchase Order for XTRAVAC packaging machine |
| 36 | Photo of XTRAVAC packaging machine |
| 37 | ServSafe Certification – Hyon Choo |
| 38 | ServSafe Certification – Soo Y. Yoo |